**Flowers v. Smith**

C.P. of Monroe County, no. 1145 Civil 1994.

*Patrick G. Geckle,* for plaintiff.
*Joseph F. Leeson Jr.,* for defendant.

WALLACH MILLER, *J.,* July 9, 1996—On May 20, 1992, vehicles operated by plaintiff Florence Flowers[1] and defendant Emma Smith were involved in an accident occurring on State Route 611 in Northampton County, Pennsylvania. Plaintiff was insured by the Maryland Casualty Company at the time of the accident, and had voluntarily elected limited tort status.

_____

1. In the body of the complaint, plaintiff is also referred to as Flower Flowers.

As a result of this accident, plaintiff allegedly sustained a variety of soft tissue injuries. Consequently, she initiated the instant action by complaint filed on May 12, 1994, seeking recovery for medical expenses, mental anguish, pain and suffering, loss of future earning capacity, property damage and other losses. Her husband, Reginald Flowers, also seeks recovery for loss of consortium. Defendant filed an answer and new matter on July 11, 1994, to which plaintiff filed a reply on October 3, 1994. On February 6, 1996, defendant filed the motion for summary judgment presently before the court. Supporting briefs and oral arguments have been entertained, and the matter is now ripe for disposition.

We begin our analysis of the instant motion with a brief review of the law governing motions for summary judgment. When ruling on a motion for summary judgment, the court may consider pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits. Pa.R.C.P. 1035(a). In order to prevail on a motion for summary judgment, the moving party has the burden of proving that there is no genuine issue of material fact, and that they are entitled to judgment as a matter of law. *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 204, 412 A.2d 466, 468 (1979); *Overly v. Kass,* 382 Pa. Super. 108, 110, 554 A.2d 970, 971 (1989).

Further, summary judgment is only properly granted in cases where the right to judgment is clear and free from doubt, with any existing doubts being resolved in favor of the non-moving party. *Marks v. Tasman,* 527 Pa. 132, 134-35, 589 A.2d 205, 206 (1991); *Musser v. Vilsmeier Auction Co. Inc.,* 522 Pa. 367, 370, 562 A.2d 279, 280 (1989). Once a motion for summary judgment is made and supported under these principles,

however, a non-moving party may not rest upon the mere allegations or denials of his pleading. Rather, the non-moving party must set forth specific facts demonstrating that there is a genuine issue for trial. If he fails to do so, then summary judgment, if appropriate, shall be entered against him. Pa.R.C.P. 1035(d). With these standards in mind, we now turn to defendant's motion for summary judgment.

First, we note that plaintiff attempts to argue that her limited tort election was not validly made, and therefore she should be deemed a full tort insured. The distinction as to whether plaintiff is a full tort insured as defined under the Motor Vehicle Financial Responsibility Law is critical for the following reason. If we find plaintiff is a full tort insured, then she may recover for noneconomic injuries; if we find she is a limited tort insured, contrarily, then she may recover for noneconomic injuries only if she has sustained a serious injury, as defined more fully below. See 75 Pa.C.S. §1701 et seq.

We observe that plaintiff first raises assertions that her limited tort election was not validly made in her response to defendant's summary judgment motion. We also note that plaintiff has had a number of years in which to secure a copy of her limited tort election form, and has thus far declined to do so. This argument, therefore, has not been properly raised, and will not be considered by the court. Even assuming *arguendo* that this issue had been properly pled, we would adopt our lengthy analysis of the limited tort election issue as set forth in *Tasso v. Young,* 3317 Civil 1994 (C. P. Monroe 1996). Under this analysis, we would find that plaintiff made a valid limited tort election, and that she would now be bound by this election.

Having determined that plaintiff is a limited tort insured, we must next determine if she has sustained a serious injury, which is statutorily defined as "death, serious impairment of body function, or permanent serious disfigurement." See 75 Pa.C.S. §1702. If plaintiff has sustained such an injury, then she is entitled to recover for noneconomic injuries, notwithstanding her limited tort election. See 75 Pa.C.S. §1791.1(b).

The Superior Court recently ruled that the question of whether a plaintiff has sustained a serious injury is a question of law to be determined by the court. *Dodson v. Elvey,* 445 Pa. Super. 479, 484, 665 A.2d 1223, 1226 (1995), *alloc. granted,* 1996 Pa. LEXIS 500 (1996). Further, the Superior Court has adopted a standard to be used when determining if there has been a serious injury. The standard articulated by the Superior Court provides:

"The 'serious impairment of body function' threshold contains two inquiries:

"(a) What body function, if any, was impaired because of injuries sustained in a motor vehicle accident?

"(b) Was the impairment of body function serious? The focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function. Generally, medical testimony will be needed to establish the existence, extent, and permanency of the impairment . . . In determining whether the impairment was serious, several factors should be considered: the extent of the impairment, the particular body function impaired, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impairment need not be permanent to be serious." *Dodson v. Elvey, supra* at 499, 665 A.2d at 1233-34, quoting *DiFranco*

*v. Pickard,* 427 Mich. 32, 39, 398 N.W.2d 896, 901 (1986).

With these standards in mind, and viewing the pleadings, depositions and interrogatories in the light most favorable to the plaintiff, we determine that the injuries she sustained do not constitute a serious impairment of body function, and thus do not qualify as a serious injury.

Immediately following the May 20, 1992 accident, plaintiff was transported to Pocono Medical Center, where she was x-rayed and released. At that time, she voiced complaints of pain in her back and her bruised right elbow. Following this, plaintiff returned to work for two days. She then consulted Dr. James Kerrigan of Neurology Associates of Monroe County on May 28, 1992. Plaintiff treated with Dr. Kerrigan for approximately one month, during which time an MRI was taken and pain medication was prescribed.

At this point, Dr. Kerrigan referred plaintiff to Dr. James Kim. Doctor Kim's report of June 9, 1992 attached to plaintiff's brief indicates that plaintiff is "in mild distress due to her low back pain." His report also notes that plaintiff had a prior history of back and knee problems as well as arthritis. Dr. Kim placed plaintiff on a course of physical therapy which continued until April 1993. From April 1993 until the present, plaintiff has been seen by her family doctor on one occasion when she was prescribed pain medication. Plaintiff missed approximately six months of work following the accident, but has been working full-time since returning to work.

At the time of her deposition, plaintiff voiced complaints with her sciatic nerve, to wit, she experiences pain in her knees and ankles when she bends down. She also has pain in her back and stiffness in her neck,

although the pain has decreased since the time period immediately following the accident. Plaintiff states that some of these problems occur at work, while other problems prevent her from doing things at home, such as making her bed, vacuuming, and bowling. Plaintiff concedes, however, that she has not been instructed by any physician to refrain from either housework or bowling.

Considering the facts provided by plaintiff in her deposition and answers to interrogatories, and in light of the factors outlined in *Dodson v. Elvey,* we note the following as facts of which there is no genuine issue. The particular body function impairments sustained by plaintiff include her right elbow, neck, back, and sciatic nerve. Regarding the length of time these impairments lasted, it appears that plaintiff's elbow injuries have resolved, and that her remaining injuries are of less intensity than they were immediately following the accident. The treatment required to correct the impairment began one week after the accident, continued for less than a year, and primarily involved physical therapy with Dr. Kim. Finally, regarding the extent of these impairments, plaintiff was precluded from working for less than a six month period following the accident. Since that time, plaintiff has worked full-time. Additionally, with the exception of a single visit in September 1995, plaintiff has not been under a doctor's care for her injuries since April 1993. Consequently, after reviewing the factors articulated in *Dodson v. Elvey,* we find that while plaintiff did sustain injuries, these injuries were not a serious impairment of a bodily function, as defined under the MVFRL.

Since plaintiff did not sustain a serious injury, she is precluded from recovering for noneconomic damages, including mental anguish and pain and suffering. Also,

we note plaintiff's answers to interrogatories nos. 60 and 65, in which she states she is not seeking recovery for lost future earning capacity or other damages. Similarly, we find the remainder of the allegations contained in the complaint to be without merit.

Therefore, we enter the following order.

## ORDER

And now, July 9, 1996, defendant's motion for summary judgment is granted.